Consolidated Publishing Company, the publisher of TheAnniston Star and appellee herein, filed a complaint against the appellants, Ernest Stone, Charles C. Rowe and Jack Hopper, in their respective capacities as officers of Jacksonville State University and as officers and directors of J.S.U Reserve Public Relations Corporation (the Corporation), to permanently enjoin appellants from denying appellee access to records regarding the "finances" of Jacksonville State University and J.S.U. Reserve Public Relations Corporation Both appellee and appellants filed motions for summary judgment. The motions for summary judgment were based upon the pleadings, affidavits, depositions and other documents on file in the trial court. The trial court granted appellee a summary judgment which enjoined appellants from denying appellee access to such records and further ordered the appellants to permit the inspection and copying of the financial records of Jacksonville State University and the records of J.S.U. Reserve Public Relations Corporation. Appellants seek to reverse the summary judgment on appeal
By letter dated May 15, 1978, appellee made written demand on appellants to be allowed to inspect and take copies of records dealing with the fund maintained by J.S.U. Reserve Public Relations Corporation. Subsequently, an employee of appellee made several personal contacts with appellant Rowe, seeking information for an article the employee planned to write on the financial status of the University. Rowe told her at the time that he did not have all the information requested, and that he would have to do some "digging." Rowe was to get back in touch with the employee. However, when Rowe failed to make this contact, the employee returned to his office. Although appellee requested access to university books and other materials which were available to auditors, Rowe finally agreed to make available only the auditor's report. Further interviews, and contact with Ernest Stone, President of Jacksonville State University, proved unsuccessful in obtaining access to these records. It is apparent that appellee's interest had focused on the finances of the J.S.U. Reserve Public Relations Corporation, incorporated to "promote the public relations of Jacksonville State University." This Corporation is funded through alumni contributions and proceeds of vending machines located in non-dormitory areas of the Jacksonville State University campus, and it expends *Page 680 
money for press relations, legislative relations, and entertainment
Appellee's claim is based upon Code 1975, § 36-12-40, the First Amendment to the United States Constitution, and Article 1, § 4, of the Alabama Constitution of 1901. We do not deem it necessary to address the constitutional provisions. Code 1975, § 36-12-40, provides:
 Every citizen has a right to inspect and take a copy of any public writing of this state, except as otherwise expressly provided by statute
Appellants contend that appellee is entitled to copy and inspect only such public records as are required by law to be kept by public officials. Code 1975, § 41-13-1. Appellants concede that the financial records of the University are public writings within the purview of Code 1975, § 36-12-40, but contend that the records of J.S.U. Reserve Public Relations Corporation are not public records because no law requires the keeping of such records. The trial court found the Corporation to be the alter ego of the University. Appellants make no issue as to this finding. Accordingly, for the purposes of this appeal, we must treat J.S.U. Reserve Public Relations Corporation as the alter ego of the University. Appellants are officers of the University as well as the officers and directors of the Corporation. Appellants were the original and sole incorporators of the Corporation, which was formed for educational purposes to promote the public relations of Jacksonville State University, and to receive and disburse funds and assets therefor
While it is interesting to note that the statute relied upon by appellee (Code 1975, § 36-12-40) uses the term "public writing," while the statute appellants cite (Code 1975, §41-13-1) defines the term "public records," we doubt the Legislature intended to make a distinction between a "public writing" and a "public record." It is clear that § 36-12-40
first appeared in the 1923 Code, and § 41-13-1 was enacted into law in 1945 in an act regulating the retention and disposal of public records generally
In summary, appellants principally rely on the authority ofHolcombe v. State, 240 Ala. 590, 200 So. 739 (1941), in which the Court held:
 At the risk of repetition and to avoid uncertainty, we conclude by saying this court holds: (1) that the public generally have the right of a reasonable and free examination of public records required by law to be kept by public officials, except in instances where the purpose is purely speculative or from idle curiosity, or such as to unduly interfere or hinder the discharge of the duties of such officer
240 Ala. at 597, 200 So. at 746. In that case, however, this Court held that the records in question were required by law to be kept. Accordingly, Holcombe cannot be considered as conclusive authority for the proposition that a record which is not required by law to be kept is not a "public writing" or a "public record" and therefore not subject to the right of a citizen to inspect and copy. While some courts have adopted the view espoused by appellants, see, e.g., Linder v. Eckard,261 Iowa 216, 152 N.W.2d 833 (1967), the Superior Court of New Jersey, Appellate Division, construing statutes similar to our § 36-12-40 and § 41-13-1, held:
 The Commissioner's conclusion that since local boards are not required to administer comprehensive achievement tests the results thereof are not public records is unsound. The fact that something need not be done does not mean that if it is done the report thereof is not a public record
Citizens for Better Education v. Board of Education of Camden,124 N.J. Super. 523, 528, 308 A.2d 35, 37 (1973). See also,Dayton Newspapers, Inc. v. City of Dayton, 45 Ohio St.2d 107,341 N.E.2d 576 (1976); and Houston v. Rutledge, 237 Ga. 764,229 S.E.2d 624 (1976). As defined in Code 1975, § 41-13-1, a public record includes "all written, typed or printed books, papers, letters, documents and maps made or received in pursuance of law" by public officers in the transaction of public business
Code 1975, § 36-12-2, provides in part: *Page 681 
 All public officers . . . shall correctly make and accurately keep . . . all such books or sets of books, documents, files, papers, letters and copies of letters as at all times shall afford full and detailed information in reference to the activities or business required to be done or carried on by such officer . . . and from which the actual status and condition of such activities and business can be ascertained without extraneous information. . . (Acts 1915, No. 237, p. 287; Code 1923, § 2690; Code 1940, T. 41, § 139.)
We have carefully considered the issue raised by appellants on this appeal, particularly with reference to our statutes Construing these statutes in pari materia, we hold that the "public writing" spoken of in Code 1975, § 36-12-40, is such a record as is reasonably necessary to record the business and activities required to be done or carried on by a public officer so that the status and condition of such business and activities can be known by our citizens. The news media are clearly appropriate vehicles by which citizens can learn about the activities and business conducted by our public officers This is not to say, however, that any time a public official keeps a record, though not required by law, it falls within the purview of § 36-12-40. McMahan v. Trustees of the University ofArkansas, 255 Ark. 108, 499 S.W.2d 56 (1973). It would be helpful for the legislative department to provide the limitations by statute as some states have done. Absent legislative action, however, the judiciary must apply the rule of reason. State v. Alarid, 90 N.M. 790, 568 P.2d 1236 (1977) Recorded information received by a public officer in confidence, sensitive personnel records, pending criminal investigations, and records the disclosure of which would be detrimental to the best interests of the public are some of the areas which may not be subject to public disclosure. Courts must balance the interest of the citizens in knowing what their public officers are doing in the discharge of public duties against the interest of the general public in having the business of government carried on efficiently and without undue interference. MacEwan v. Holm, 226 Or. 27, 359 P.2d 413 (1961)
While appellee made a sufficient demand upon all of the appellants by its letter of May 15, 1978, to inspect and take copies of the records dealing with the funds of the Corporation, and appellants have not denied that they refused to allow the inspection and copying of such records, we must consider the summary judgment aspect of this case in light of our holding with respect to the issue of what constitutes a public writing under Code 1975, §§ 36-12-2, 36-12-40, and41-13-1. Under our law, summary judgment is to be granted only where there is no genuine issue as to a material fact and the moving party is entitled to a judgment as a matter of lawButler v. Michigan Mutual Insurance Co., 402 So.2d 949 (Ala 1981); Studdard v. South Central Bell Telephone Co.,356 So.2d 139 (Ala. 1978); Whitehead v. Davison Oil Co., 352 So.2d 1339
(Ala. 1977). Nevertheless, the trial court in granting summary judgment could not have considered the character of the records in question because this Court has not heretofore addressed the issue. This Court has not seen the records for which demand was made to inspect and copy. Therefore, the trial court should determine if these records are reasonably necessary to record the business and activities required to be done or carried on by a public officer so that the status and condition of such business and activities can be known. Accordingly, this case is reversed and remanded to the trial court for a judgment consistent with the pronouncement as to the law in this opinion
REVERSED AND REMANDED WITH DIRECTIONS
TORBERT, C.J., and MADDOX, FAULKNER, JONES, ALMON, SHORES, EMBRY and ADAMS, JJ., concur
BEATTY, J., dissents *Page 682